OPINION
{¶ 1} Plaintiff-appellant, Tammy Young, the administratrix of the estate of Douglas Young, appeals from a judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, The University of Akron. For the following reasons, we affirm in part and reverse in part. *Page 2 
 {¶ 2} In 1994, Guy Marrelli, an electrical engineer who worked for appellee since 1990, was informed that the existing oil switchgears on appellee's campus should be replaced. A switchgear is a device that controls, meters, and protects the flow of electric power. Switchgears were located in different areas of appellee's campus to control the flow of electricity from electrical substations to various campus buildings.
 {¶ 3} Sometime in 1998, Marrelli completed project drawings and specifications for the switchgear replacement and the project was bid. Pursuant to that bidding process, appellee awarded the project to Thompson Electric ("Thompson"). Thompson agreed to provide all necessary materials to complete the project in accordance with Marrelli's specifications. As part of those specifications, appellee required Thompson to notify it of any changes in the work with a written addendum or change order. Appellee also required Thompson to keep "as-built" drawings, which would show the actual work performed where the work differed from the original project drawings. Thompson was to record any approved changes on the as-built drawings. The specifications also prohibited Thompson from making any substitutions.
 {¶ 4} Switchgears include a structure known as a bushing which provides an insulated entrance into the switchgear for an energized conductor. In essence, the bushing is the point of entry where a cable carrying electricity connects to the switchgear so that the switchgear can then transform the electricity and transport it to its intended destination. The bushing also prevents energized conductors from coming into contact with each other and the switchgear itself. The switchgear involved in this case contained four rows of bushings with three bushings in each row. Marrelli's project drawings specified that the new switchgears were to have 200 amp bushings. Marrelli's *Page 3 
specifications also required that the energized cables connect to the bushings with 200 amp load break elbows. Load break elbows provide an insulated high voltage connection for the energized cable to connect to the switchgear. Load break elbows allow the switchgear to be "dead front," meaning that the electrical cables are fully insulated and the switchgear can be disconnected or operated while energized (under load) assuming all other safety precautions are taken.
 {¶ 5} Although the project specifications required 200 amp bushings, Thompson submitted drawings showing 600 amp bushings. Nevertheless, Marrelli approved Thompson's drawings, and Thompson purchased 600 amp bushings for the project. This change in the bushings created a problem because the specified 200 amp load break elbows were incompatible with, and could not be connected to, the 600 amp bushings.
 {¶ 6} Douglas Young ("Young") was a Thompson employee and the foreman for this project. When it was discovered that the 200 amp load break elbows would not fit the 600 amp bushings, Young spoke with his boss, division manager William Anderson, and a sales representative from the company who sold the switchgear, Haverstock Bowers. Pursuant to that conversation, the decision was made to tape the connections with 130C 3M electrical tape. Apparently, Young taped the connections himself. Thompson did not submit a change order for the new connections to Marrelli, nor did it make any as-built drawings showing the taped connections. Young and Anderson subsequently told Marrelli about the incompatibility of the bushings and the load break elbows and the need to tape the connections. Marrelli contends that he did not know about the taped connections until May 1999, when he made a final inspection of Thompson's work. *Page 4 
Marrelli testified that he accepted the taped connections only after Thompson assured him that the connections were safe.
 {¶ 7} On May 16, 2001, Young was working on the switchgear that contained the taped connections. During the course of his work, Young was electrocuted and died as a result of the injuries he sustained. Thereafter, appellant filed the instant complaint against Marrelli and appellee. Appellant alleged that appellee's negligence caused Young's death. Appellant further alleged that Marrelli's willful, wanton and reckless conduct also caused Young's death. After an evidentiary hearing, the trial court determined that Marrelli did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. Thus, the trial court determined that he was entitled to civil immunity. R.C. 2743.06(F); R.C. 9.86. This court affirmed that determination.Young v. Univ. of Akron, Franklin App. No. 04AP-318, 2004-Ohio-6720.
 {¶ 8} The case proceeded against appellee, who filed a motion for summary judgment. Appellee argued that it was entitled to judgment as a matter of law based on either discretionary immunity or comparative negligence principles. The trial court found that Marrelli's decisions to approve the project drawings and to accept the taped connections required a high degree of judgment and discretion. Therefore, the trial court determined that appellee was immune from liability based on the doctrine of discretionary immunity. The trial court did not address appellee's comparative negligence argument.
 {¶ 9} Appellant appeals and assigns the following errors:
 I. THE COURT OF CLAIMS ERRED BY GRANTING SUMMARY JUDGMENT FOR DEFENDANT, UNIVERSITY OF AKRON ON THE BASIS THAT THE UNIVERSITY OF AKRON HAD DISCRETIONARY IMMUNITY AS A RESULT OF MAKING A BASIC POLICY DECISION *Page 5 
CHARACTERIZED BY A HIGH DEGREE OF OFFICIAL JUDGMENT OR DISCRETION.
 II. THE COURT OF CLAIMS ERRED BY BASING ITS DECISION ON DISPUTED FACTS UPON WHICH REASONABLE MINDS COULD DRAW DIFFERENT CONCLUSIONS.
 III. THE COURT OF CLAIMS ERRED BY NOT TAKING INTO CONSIDERATION ALL OF THE EVIDENCE THAT WAS OBTAINED SUBSEQUENT TO THE IMMUNITY HEARING CONDUCTED ON DECEMBER 11 AND 12, 2003.
 {¶ 10} Appellee also filed the following cross-assignment of error:
THE TRIAL COURT ERRED BY NOT RULING THAT UNDER A COMPARATIVE NEGLIGENCE ANALYSIS PLAINTIFF'S DECEDENT'S NEGLIGENCE FAR EXCEEDED ANY NEGLIGENCE ON THE PART OF APPELLEE.
 {¶ 11} Appellant appeals from the trial court's summary judgment decision. Appellate review of a trial court's grant of summary judgment is de novo. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157; Hahn v. Satullo,156 Ohio App.3d 412, 2004-Ohio-1057, at ¶ 33. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal Co., Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111.
 {¶ 12} Summary judgment is proper when the movant demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party *Page 6 
being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183.
 {¶ 13} By her first and second assignments of error, appellant contends that the doctrine of discretionary immunity does not apply to exempt appellee from liability in this case. In part, we agree.
 {¶ 14} The doctrine of discretionary immunity provides that "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." Reynolds v. State (1984),14 Ohio St.3d 68, paragraph one of the syllabus; Wallace v. Ohio Dept. ofCommerce, 96 Ohio St.3d 266, 2002-Ohio-4210, paragraph two of the syllabus. This doctrine has been applied to immunize the state from liability for discretionary decisions such as whether or not to install a traffic signal at an intersection, Winwood v. Dayton (1988),37 Ohio St.3d 282, what type of traffic signal to install, Garland v. Ohio Dept.of Transp. (1990), 48 Ohio St.3d 10, and whether or not to furlough a prisoner. Reynolds. See, also, Deavors v. Ohio Dept. of Rehab. andCorrection (May 20, 1999), Franklin App. No. 98AP-1105 (discretionary immunity applies to decisions concerning granting of parole, prisoner transfers, and security status).
 {¶ 15} Once such a discretionary decision is made to engage in a certain activity or function, however, the state may be held liable for the negligence of its employees and agents in carrying out or implementing such activities. Reynolds; Winwood, at 286. For example, the state is immune for its decision to furlough a prisoner. Once the state makes the decision to furlough a prisoner, however, it can be held liable for the *Page 7 
negligence of its employees in dealing with the prisoner.Reynolds, at 70. Additionally, the negligent implementation of a basic policy decision may also be actionable, even if such implementation allows state employees to exercise some degree of discretion.Semadeni v. Ohio Dept. of Transp. (1996), 75 Ohio St.3d 128, 132, citingAnderson v. Ohio Dept. of Ins. (1991), 58 Ohio St.3d 215, 218, overruled on other grounds; Wallace.
 {¶ 16} Appellant alleged that Marrelli disregarded his own project specifications when he approved the 600 amp bushings rather than the specified 200 amp bushings and that he wrongfully approved the use of taped connections instead of load break elbows. Appellant contends that Marrelli's approval of 600 amp bushings and his decision to accept taped connections were not basic policy decisions but, instead, were negligent decisions made while implementing appellee's broader policy decision to replace old switchgears. Appellant challenges two distinct aspects of Marrelli's conduct: (1) his approval of drawings showing 600 amp bushings rather than the specified 200 amp bushings; and (2) his decision to accept taped connections instead of load break elbows. Appellee contends that both of Marrelli's decisions involved a high degree of official judgment or discretion, and therefore, appellee is immune from vicarious liability under the doctrine of discretionary immunity. We will address the issue of taped connections first.
 {¶ 17} Marrelli had several alternatives when he was faced with the incompatibility of the bushings and the load break elbows. One of those alternatives was to accept the taped connections. Taping electrical connections is an acceptable practice as long as the taping is done properly. Reinhold Luther, appellant's own expert witness, and Ralph Hoffman, appellee's expert witness, both testified that taping these connections was *Page 8 
acceptable, provided that they were taped properly. Although appellant's second expert witness, Marleus Zahn, testified that the use of tape alone to terminate a high voltage connection such as the one at issue here was unsafe, he did not dispute the general premise that taping connections is acceptable if done properly. After receiving assurances from the contractor that the taped connections were safe, Marrelli accepted the taped connections. His decision to accept the taped connections is the type of discretionary decision for which the state is not subject to liability based on the doctrine of discretionary immunity. See Garland (immunity for decision as to what type of traffic signal to install); Howell v. Union Twp. Trustees (Mar. 18, 1997), Scioto App. No. 96CA2430 (immunity for choice to use one substance over another to control dust on road); Upjohn Co. v. Ohio Dept. of HumanServ. (1991), 77 Ohio App.3d 827, 833 (immunity where selection made among choice of policy alternatives). Therefore, appellee is immune from liability arising from Marrelli's decision to accept the taped connections.
 {¶ 18} With respect to Marrelli's approval of drawings showing 600 amp bushings rather than the specificed 200 amp bushings, there was no choice between policy alternatives. Nothing in the record suggests that Marrelli was even aware of the discrepancy between the drawings submitted by Thompson and the project specifications at the time he approved the drawings. Marrelli testified that he did not know what he was thinking at the time he approved the inconsistent drawings. His decision was not a basic policy choice resulting from the exercise of judgment or discretion that would be entitled to immunity. SeeRhodus v. Ohio Dept. of Transp. (1990), 67 Ohio App.3d 723, 732 (no immunity for failure of department to comply with its own plan; no evidence that change in *Page 9 
plan resulted from an exercise of judgment). Appellee is not immune from potential liability for Marrelli's approval of drawings that did not conform with his own project specifications.
 {¶ 19} To the extent that appellee is immune from liability from Marrelli's decision to accept the taped connections, we overrule appellant's first and second assignments of error. To the extent that appellee is not immune for Marrelli's decision to approve drawings that did not conform with his own project specifications, we sustain appellant's first and second assignments of error.
 {¶ 20} Appellant contends in her third assignment of error that the trial court erred when it granted summary judgment in favor of appellee without considering depositions and affidavits produced after this court's previous decision in this case. Appellant claims that these depositions and affidavits establish that no witness had ever seen this type of switchgear with taped connections, that there were no specifications for the taped connections, that Marelli did not use any engineering analysis when he accepted the taped connections, that Young was properly using the switchgear when he was electrocuted, and that the hazard created by taped connections would not be open and obvious to a user. We first note that there is no evidence that the trial court failed to consider the entire record when it granted appellee's motion for summary judgment. Additionally, the facts that appellant alleges are established by this evidence are not relevant to the trial court's discretionary immunity determination. Appellant's third assignment of error is overruled.
 {¶ 21} Finally, appellee has asserted a cross-assignment of error, in which it contends that it is entitled to judgment as a matter of law based on comparative *Page 10 
negligence. Appellee contends that Young's negligent conduct clearly exceeded the negligence, if any, of its employees. Specifically, appellee points to Young's participation in the initial decision to tape the connections, his role in the taping, his decision to decline an offer to deenergize the switchgear and his failure to utilize safety equipment as he worked on the energized switchgear.
 {¶ 22} Appellee presented this argument to the trial court in its motion for summary judgment. However, because the trial court granted summary judgment based solely on discretionary immunity grounds, it did not address appellee's comparative negligence argument. Generally, appellate courts do not address issues which the trial court declined to consider. Lakota Loc. School Dist. Bd. of Edn. v. Brickner (1996),108 Ohio App.3d 637, 643, citing Bowen v. Kil-Kare, Inc. (1992),63 Ohio St.3d 84, 89. Given the factual nature of comparative negligence issues, we decline to consider appellee's comparative negligence argument and instead, remand this matter for the trial court to initially consider the argument. See Warner v. Uptown-Downtown Bar (Dec. 20, 1996), Wood App. No. WD-96-024 (appellate court declined to review argument made in summary judgment motion but not addressed by trial court's decision);Manda v. Stratton (Apr. 30, 1999), Trumbull App. No. 98-T-0018 (noting that it would be premature for appellate court to address claims of common law negligence that were not addressed by trial court, where trial court resolved summary judgment only on strict liability claims); see, also, Stratford Chase Apts. v. Columbus (2000), 137 Ohio App.3d 29,33 (appellate court's independent review of summary judgment decision should not replace trial court's function of initially determining propriety of summary judgment).
 {¶ 23} Appellee's cross-assignment of error is overruled. *Page 11 
 {¶ 24} In conclusion, we sustain in part and overrule in part appellant's first and second assignments of error, and overrule appellant's third assignment of error. Appellee's cross-assignment of error is overruled. Accordingly, the judgment of the Court of Claims of Ohio is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part;
 and cause remanded.
 PETREE and McGRATH, JJ., concur. *Page 1